Tania L. Whiteleather SBN 141227
Law Offices of Tania L. Whiteleather, Inc.
5445 E. Del Amo Blvd., Suite 207
Lakewood, CA 90712
tel(562) 866-8755 fax(562) 866-6875
tlwhiteleather@gmail.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.S. a minor, by and through his Guardian Ad Litem, THOMAS SCHNEIDER,<br><br>    Plaintiff,<br><br>    v.<br><br>LONG BEACH UNIFIED SCHOOL DISTRICT, A Local Educational Agency,<br><br>    Respondent. | Case No.<br><br>Complaint for Partial Reversal of Due Process Decision and For Payment Of Reasonable Fees and Costs |

Plaintiff presents his Complaint as follows:

**JURISDICTION AND VENUE**

1.  Plaintiff's action arises under 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(3).

2.  Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b) because the Plaintiff and Long Beach Unified School District ("District") are located within this district and the claims arose within this district.

3.   A due process hearing has been held by OAH

1

pursuant to the Individuals with Disabilities Education Act or "IDEA"; that a Decision was issued by OAH on March 6, 2021.

4. Exhaustion of administrative remedies has been satisfied, as the parties have participated in a due process hearing under IDEA and State law and have received a Decision from OAH regarding that matter. The Decision was received on March 6, 2021.

## THE PARTIES

5. T.S. is an thirteen-year-old student with a disability who, at all times relevant to this complaint, has been a student residing in the attendance area of the Long Beach Unified School District ("District"). T.S. is eligible for special education as a student with autism and other disabilities and has been eligible under IDEA and State law for special education his entire school career.

6. THOMAS SCHNEIDER is the father of T.S. and, at all times relevant to this complaint, has, along with T.S.'s mother, been the individual responsible for T.S.

7. Defendant LONG BEACH UNIFIED SCHOOL DISTRICT ("District") is, and at all times herein mentioned was a school district duly organized and existing under the laws of the State of California as a Local Educational Agency (LEA). At all times relevant to this matter, the District has had responsibility for providing appropriate education to T.S. as required by IDEA and State law and has had the duty to comply with all mandates of the ADA,

Section 504, and the Individuals with Disabilities Education Act.

8. The District is and at all times relevant to this action was responsible for accommodating the disabilities of students enrolled in District schools and responsible for ensuring that District employees comply with both ADA and Section 504. For all times relevant to this action, District was and is the local educational agency responsible for providing T.S. with both full and equal access to District public education programs and activities in compliance with the requirements of federal and state law.

**COMPLAINT**

9. T.S. is a minor with multiple disabilities, his primary being autism. In addition, T.S. has disabilities and needs in behavior, academics, Speech/Language, social skills, occupational therapy, and related areas.

10. At least two evaluations have identified T.S.'s cognitive abilities as average. His academic and related skills, however, are far below average and not at the level they should be after his years of specialized instruction to address his unique educational needs. His academic skills are at the elementary level.

11. After multiple denials of procedural and substantive FAPE (free appropriate public education) by the District, T.S.'s parents filed a due process complaint pursuant to the Individuals with Disabilities Education Act. That complaint, filed with the Office of

Administrative Hearings as Case No. 2020090441, was heard on March 9, 10, 11, 17, and 18, 2021.

12. A Decision was issued by OAH on March 6, 2021. That Decision was neither thorough nor careful, as required by law. The OAH administrative law judge ("ALJ") failed to appropriately address the procedural violations of IDEA by the District, failed to acknowledge the denial of meaningful participation to the parents by the District's actions, and consider the effect of the District's denial of agreed-upon and necessary assistive technology, i.e., that Thomas was unable to independently read material without a functioning C-Pen.

13. The issues raised in the OAH complaint by T.S. were:

1) Did Long Beach timely conclude Student's IEP that commenced on February 18, 2020?
2) Did Long Beach fail to assess Student in the area of Occupational Therapy, including sensory integration, from September 2019 through September 2020, such that Student is entitled to an independent educational evaluation at public expense?
3) Did Long Beach deny Student a FAPE from March 2020 through September 2020 by not providing Student with educational services that Student could meaningfully access?
4) Did Long Beach deny Student a FAPE from March 2020 through September 2020 by

       failing to provide Student with a computer with which he could meaningfully access online instruction?

5) Did Long Beach deny Student a FAPE from February 2020 through September 2020 by failing to p0rovide Student with the vision therapy services recommended by Dr. Ikeda?

6) Did Long Beach deny Student a FAPE from September 2019 through September 2020 by failing to provide Student with assistive technology and accommodations described in his IEP?

7) Did Long Beach deny Student a FAPE from September 2019 through September 2020 by denying him the opportunity for mainstreaming with non-disabled peers?

<u>The District Failed to Timely Conclude T.S.'s Annual IEP.</u>

14. The issue raised by Plaintiff at hearing was whether the February 2020 IEP had been timely concluded. The facts established that, even as of September 2020, the District had not completed the annual IEP for T.S. He began school (and continued for several months) without an annual IEP in place, without any offer of FAPE.

15. An annual IEP must be in place for a student at the beginning of each school year. 34 C.F.R. § 300.323 Section c, C.E.C. §§ 56340, 56343(d), 56344(c) The reason

5

for creation of an annual IEP is to address the student's anticipated annual progress of a student and to plan for his progress in the coming school year. Simply providing the same services every year... those in a prior year's IEP... does not comply with the mandates of IDEA nor of State special education law to review the past year's annual progress (if any) and to base any IEP on the student's present levels of performance, as is required by 20 U.S.C. § 1414(d)(1)(A)(i)(I) and 34 C.F.R. § 300.305(a).

16. The administrative law judge ("ALJ") ignored that requirement that an annual IEP... with an offer of FAPE based on present levels...be in place at the beginning of each school year and justified the District's unreasonable failure to offer a FAPE for the 2020-21 school year because one parent required an interpreter and because many people had to be invited to the IEP meetings. The ALJ side-stepped the fact that IEPs must be held within thirty (30) days of any need to hold an IEP (C.E.C. §§ 56343.5, 56344(a) and found no issue with District's holding IEPs on February 18, February 28, and May 20, 2020 (and continuing into October 16, and November 12, 2020), without timely reconvening the IEP or concluding the annual IEP.

17. The ALJ held that a procedural violation results in a denial of FAPE if 1) it impeded the child's right to a FAPE, 2) significantly impeded the parents opportunity to participate in the decision-making process of FAPE,

or 3) caused a deprivation of educational benefits. DEC. P. 6

18. What the ALJ failed to note was that the lack of an annual IEP for T.S. for the 2020-21 school year left him without any IEP to address his current educational needs as required under IDEA, and could not, therefore, be appropriate. No final FAPE offer was made by September 2020; in fact, no final FAPE offer was made until the completion of the November 12, 2020 IEP, well beyond the start of the 2020-21 school year, contrary to C.E.C. § 56341.1(d)

19. The procedural failure by the District to have an annual IEP for T.S. in place (when it failed to finish the annual IEP from February to November 2020) left T.S. without services to address his current needs and left the parents without an appropriate, needs-based offer of FAPE until November 2020, long after the District was mandated to have a current IEP in place for T.S.

### THE DISTRICT KNEW THAT OCCUPATIONAL THERAPY WAS AN AREA OF SUSPECTED DISABILITY.

20. When an LEA is made aware that there is a suspected area of disability, the LEA has a duty under IDEA and State law to conduct an assessment in that area, as required by C.E.C. 56320(f). A disability is suspected when someone raises the possibility of an issue for the student in an area that impedes his education. Such was the case with the parties' written agreement of August 2019.

7

21. On August 6, 2019, the parties signed a settlement agreement. Included in that agreement was a term that required the District to provide an independent educational evaluation ("IEE") in Occupational Therapy to T.S.

22. The District failed to provide that IEE, and, to date, has never provided that independent evaluation. The fact that the District agreed to provide an evaluation in Occupational Therapy meant that it knew that such was an area of disability, or that, at the very least, the parents sought such an assessment.

23. Testimony at hearing also established that the parents had given the District a prior occupational therapy evaluation in 2018 and had shared and expressed concerns about T.S.'s needs in that area. Despite the parents' provision of that independent occupational therapy to the District in 2018, the District took no steps to assess T.S. in that area at any time.

24. The ALJ stated that, "Student did not provide any evidence that Long Beach was required to follow up with an occupational therapy or sensory integration assessment as a result of the settlement agreement or that Long Beach agreed that occupational therapy and sensory integration were areas of concern." DEC p. 9

25. What the ALJ failed to understand was that an LEA does not have to agree that any specific area is one of concern; it merely has to assess in any area that is a "suspected" area of disability; here, that suspected

8

area is the one in which the parents obtained District's agreement to conduct an evaluation: occupational therapy. The ALJ also found that an independent evaluator, Dr. Johnson, had not recommended an assessment in occupational therapy or in sensory integration. The ALJ also wrongly justified the District's failure to conduct any assessment in those areas on the fact that the parents, who had signed a written agreement, ". . . did not raise occupational therapy or sensory integration as an area of need during the relevant time period outside of the mediation and settlement agreement context." DEC p. 10

26. Given the fact that the District had agreed to provide an independent evaluation to the parents, it was unnecessary for them to ask – again – for an evaluation in occupational therapy.

### THE EVIDENCE AT HEARING ESTABLISHED THAT THE DISTRICT DID NOT PROVIDE T.S. WITH A COMPUTER WITH WHICH HE COULD ACCESS ONLINE INSTRUCTION.

27. Testimony at hearing established that T.S. had two separate chromebooks that were not usable. His father twice returned a chromebook to the District, letting staff know that the chromebook was not allowing his son to access virtual learning.

28. When the second chromebook was returned, the parent was told to simply through it in the trash by District staff.

29. From the end of the school year in June 2020, T.S. had no chromebook whatsoever. At hearing, his

father testified that he had not received an offer of ESY/Extended School Year (i.e., special education summer school) for T.S. for 2020 and, as a result, did not believe he would need a chromebook since T.S. was not registered for ESY.

30. In response to the father's testimony, and although there was no issue raised regarding ESY, the ALJ allowed the District to bring in a rebuttal witness. That witness, a District teacher, testified that T.S. attended ESY classes. This was impossible, as the District never offered T.S. ESY placement, and T.S. was never registered for ESY access virtual instruction.

31. In response to the rebuttal testimony, T.S. requested and obtained his District transcripts for ESY 2020. There was no record of T.S. attending ESY/summer school for 2020, and there was no documentation of the parents' <u>required</u> registration of T.S. for that ESY.

32. T.S. moved the ALJ to allow the admission of the very documents provided to his counsel after the hearing had concluded. The motion was based on a declaration from counsel's office that the documents had been late received. The ALJ denied admission of those documents, stating that T.S. should have sought those prior to the hearing. In fact, because T.S. and his parents had no reason to believe that the District would bring someone to testify about ESY 2020 – which was not an issue – was the reason they had not sought those records from the District.

10

33. The ALJ's denial of admission of those records, made relevant by the credibility of a late-identified District witness, denied T.S. the ability to address that credibility. T.S. will move to supplement the record in this matter.

### THE DISTRICT FAILED TO PROVIDE THE ASSISTIVE TECHNOLOGY – A COMPUTER AND OTHER DEVICES – THAT T.S. REQUIRED TO COMPLETE WORK INDEPENDENTLY.

34. From March 2020 on, students, including T.S., required a working computer to access online/virtual instruction. The evidence at hearing established that T.S.'s chromebook was not working consistently. Because there is no discovery in OAH matters (See *MC v. Antelope Valley Unified School District,* 852 F.3d 840, 851 (9th Cir. 2017), Plaintiff sought educational records but was not provided with T.S.'s 2020 classwork/homework. Those records will be sought in this matter, and Plaintiff will make a motion to supplement the administrative record with any documents finally obtained.

35. In addition, T.S.'s IEP required a C-Pen to help him read material. The C-P stopped working in February 2020 and was not replaced for T.S. until September 2020.

36. At hearing, T.S.'s case carrier described how the C-Pen allowed T.S. to read material. She then explained that, without the C-Pen, he could depend on District staff to read to him.

37. Without the C-Pen, the evidence at hearing established that T.S. could not independently read printed material. For some reason, the ALJ confused the

use of the C-Pen as a tool for writing (DEC, p. 15) and found that denial of that device did not deny T.S. a FAPE.

38. In the February 2020 IEP meeting, Dr. Ikeda presented his independent evaluation in vision therapy. The District documented the parent's question to Dr. Ikeda about whether T.S. required vision therapy and also documented Dr. Ikeda's response, as documented by the District, "...it would be recommended with further testing on the need for the length and duration." The ALJ simply ignored the IEP and documented statement of Dr. Ikeda.

39. At that IEP meeting on February 18, 2020, the District agreed that Dr. Ikeda should conduct additional assessments of T.S. It simply failed to provide Dr. Ikeda a new contract so that the additional assessments could be completed.

40. In addition, the only testimony at hearing about communications and Dr. Ikeda's need for a new contract was from T.S.'s father. He testified that he called both Dr. Ikeda's office and the District. Dr. Ikeda's office indicated they were waiting for a new District contract; the District told the parent that they would take care of the new contract. Nobody contradicted the sworn testimony of T.S.'s parent. Because of the lack of discovery in the OAH matter, Plaintiff will seek documents in this matter and then seek to supplement the administrative record.

41. To date, despite the District's agreement to provide the additional assessments by Dr. Ikeda to determine the amount of vision therapy T.S. required, it has failed to take the steps necessary to obtain that assessment.

**FIRST CAUSE OF ACTION**

**For Partial Reversal of the March 6, 2021 OAH Decision.**

42. Plaintiff incorporates by reference each and every allegation of Paragraphs 1 through 41 of the Complaint as though fully set forth herein.

43. As established by the documentary evidence and testimony at hearing, the District failed to provide both procedural and substantive FAPE to T.S. during the period at issue. The failure of the ALJ to find for Plaintiff on most of the issues, including her failure to note the facts established and to apply IDEA and State law, meant that much of her Decision was neither thorough nor careful and should be overturned in favor of Plaintiff.

**SECOND CAUSE OF ACTION**

**For Award of Reasonable Attorney's Fees and Costs.**

44. Plaintiff incorporates by reference each and every allegation of Paragraphs 1 through 43 of the Complaint as though fully set forth herein.

45. Plaintiff prevailed on a portion of the issues he raised at hearing in the underlying matter. On the remaining issues, he should have prevailed.

46. Upon issuance of an order and judgment regarding

the underlying OAH Decision, Plaintiff will file a motion for reasonable attorney's fees based upon his status as a prevailing party.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests relief as follows:

1. The Court find the portion of the OAH Decision in Case No. 2020090441 that was not in Plaintiff T.S.'s favor to have been neither nor thorough nor careful and that it failed to address the facts established at hearing as well as the law;
2. The Court find that Plaintiff should have prevailed on all his issues at hearing and that reversal of the OAH Decision is appropriate;
3. The Court Order appropriate compensatory education for T.S. as requested by Plaintiff at hearing;
4. The Court Order payment of reasonable fees and costs to Plaintiff's counsel for her representation of Plaintiff at hearing and in this matter;
5. The Court Order such additional relief as the Court determines to be appropriate.

Dated: August 3, 2021

By: /s/ Tania L. Whiteleather
TANIA L. WHITELEATHER
Attorney for Plaintiff